## THE EL ORIENTE.
### No. 9548.

District Court, E. D. New York.

Jan. 18, 1930.

Alexander, Ash & Jones, of New York City, for libelants.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City, for claimant.

BYERS, District Judge.

Hearing on exceptions to commissioner's report ascertaining damages in a cause in admiralty.

The coal barge O. W. No. 21 was in collision with claimant's steamship El Oriente in the North River in this district, opposite Hoboken, N. J., in the afternoon of July 21, 1926.

The damage thus occasioned was the subject of inquiry by the commissioner pursuant to interlocutory decree, and he has recommended the entry of a final decree in favor of the libelant, the owner of the barge, against the said steamship, the claimant, in the sum of $2,500 and interest. The correctness of his conclusion is challenged on this hearing.

The cost of repairs to the barge, consequent upon the collision, would have exceeded the value of the vessel, and the loss, therefore, is considered to be total.

The sole question presented is that of "market value" during 1926.

The commissioner is persuaded that no market existed in this port for this vessel during the year 1926, and, hence, he has concluded that it was his duty to adjudge that the "fair replacement value of the vessel in 1926 would be Fifty-five hundred ($5500.00) dollars."

It appears that this boat was built in 1906, and was about 95 feet by 17 over-all, and had a carrying capacity of 230 to 240 tons. Repairs are said to have cost $2,200 in 1914, and additional repairs during 1923 and 1924 are said to have cost $1,783.06, but there is no *evidence* in the record of the original cost of the vessel's construction.

Having these latter figures in mind, and "considering a proper depreciation," the commissioner is of the view that the value at the time of the collision was $2,500.

The formula by which the "proper depreciation" was computed was not stated, and, hence, its dependability is a matter of conjecture, as there seems to be no evidence on the subject in the record.

Before recourse properly may be had to such a method of computing the libelant's loss, conditions must be such that no market value can be shown. The Samson (C. C. A.) 217 F. 344. Have such conditions been revealed by this record? The claimant's witness French testified that, as marine superintendent for Berwind-White Co., he had personally handled or participated in ten

sales for his company, during 1926, of coal boats of 300 tons capacity, the then ages of which varied from 28 to 25 years. They were not regarded by his company as worth keeping, because their repairs exceeded their usefulness. In other words, that it cost more to keep them up than they were worth to the owner. They were all in poor, or fair operating condition. He knew that some of them were in operation in October, 1929.

The selling price of those boats averaged less than $1 per ton.

The commissioner evidently reasons that repeated sales of similar vessels during 1926 did not disclose a market for this boat, because the subjects of these transactions differed from O. W. No. 21: (a) In point of age; the difference being a matter of from five to eight years—not a matter of great moment in the life of a coal barge. (b) By reason of the alterations and repairs in 1914 costing $2,200, and repairs in 1923 and 1924 costing $1,783.06.

The latter element would be important if the expenditures had resulted in the creation of a unique and unusual craft, but nothing in the record supports such a theory.

The libelant's witness Williams describes the repairs in 1914 as a whole new stern cabin, some bottom plank and rails; he says "she was sunk; some of it was caused by the raising, and new combings."

Clearly, nothing was done but to raise a sunken coal barge, and put it in shape to pursue its prosaic calling in the waters of this port. Further repairs were made nine or ten years later, but in 1926 "O. W. No. 21" was a coal barge and nothing more.

It was in good condition for a craft of its years, and it is reasonable to infer that Mr. French could have sold this vessel as easily as those which he did sell for his own company; the price that he was able to secure, of about $1 per ton, furnishes some indication of what this coal barge could have been sold for by a willing seller to a willing buyer, with the important exception that he was selling boats that were in poor or fair condition, while this twenty-year old craft that had once been sunk was in good condition.

The libelant's witnesses as to value assert that the figure of $3,500 should be accepted, based upon reproduction cost in 1926, less depreciation. Their testimony is not convincing, and their estimates cannot be accepted in the absence of an explanation of their formulæ of depreciation.

One of the claimant's witnesses, Donovan, a marine insurance broker and surveyor, opines that the fair market value involved was $1,000, and he knew this boat.

Another witness called by the claimant was Jolly, a marine surveyor for ten years with the U. S. Salvage Association, who attended the survey of this vessel following the collision. He made a thorough examination, and concluded that the value prior to the collision was $500.

These two opinions, considered in connection with actual prices for similar vessels but in inferior condition and of greater age, as shown by the testimony of French, indicate an area of data within which the fair and reasonable market value of this vessel may be appraised, without resort to theoretical devices. The sum of $600 with interest from July 21, 1926, is the amount for which final decree may be taken, and all exceptions to the commissioner's report which are consistent herewith are sustained.